UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ARDEN WOOD, INC., et al.,               )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )        Civil Action No. 05-0363 (PLF)
                                        )
UNITED STATES CITIZENSHIP               )
  AND IMMIGRATION SERVICES,             )
et al.,                                 )
                                        )
            Defendants.                 )
_____ )

OPINION

Plaintiffs Arden Wood, Inc., Tenacre Foundation, the Association of

Organizations for Christian Science Nursing ("AOCSN"), and Shirley M. Bihag brought this

action against defendants United States Citizenship and Immigration Services ("CIS"),

Administrative Appeals Office ("AAO"), the United States Department of Homeland Security,

and the United States Department of Justice seeking declaratory and injunctive relief for alleged

violations of the Administrative Procedure Act and the First and Fifth Amendments to the United

States Constitution.  See Complaint ("Compl.") at 1-2.  This matter is before the Court on

defendants' motion to dismiss or for summary judgment and plaintiffs' motion for summary

judgment.[1]  The Court dismisses this action for lack of subject matter jurisdiction.

_____

[1]     The papers submitted in connection with these motions include: Defendant's
Motion to Dismiss or for Summary Judgment ("Def. Mot."); Defendants' Memorandum in
Support of Motion to Dismiss or for Summary Judgment ("Def. Mem."); Defendant's Statement
of Material Facts Not in Dispute ("Def. SMF"); Plaintiffs' Opposition to Defendants' Motion to
Dismiss ("Pl. Opp"); Plaintiff's Motion for Summary Judgment ("Pl. Mot."); Plaintiffs'
Memorandum in Support of Motion for Summary Judgment ("Pl. Mem."); Defendants'

I. BACKGROUND

One of the tenets of the Christian Science religious denomination is the rejection of most conventional medicine and medical practices, in favor of a "radical reliance" on God and prayer for healing.  See Compl. ¶ 19.  Christian Science nursing facilities ("CSNFs") are establishments that provide care to sick individuals in accordance with the tenets of the religion. Plaintiff Arden Wood, a 501(c)(3) not-for-profit organization associated with the denomination, is one such facility.  See id. ¶ 14.  Plaintiff Tenacre Foundation is another; indeed, it is one of the three largest in the world.  See id. ¶ 15.  Plaintiff AOCSN is a non-profit association with 32 member facilities, the purpose of which "is to support Christian Science nursing and Christian Science nursing organizations."  See id. ¶ 17.

CSNFs employ Christian Science nurses ("CSNs"), who are not nurses in the medical sense but provide "a spiritual ministry characterized by religious service in the context of spiritual healing."  Compl. ¶ 19.  Plaintiffs assert that it is crucial to the provision of care by CSNFs that they be able to employ foreign nationals as CSNs; such foreign nationals need visas in order to come to the United States to do this work.  See Compl. ¶ 36.  In 1990, Congress created new visa classifications for religious workers, R-1 nonimmigrant classifications (temporary) and I-360 special immigrant visas (allowing for permanent resident alien status). See 8 U.S.C. § 1101.  One category of "employment-based immigrants" specifically provided for by the statute is "special immigrant religious workers."  See 8 C.F.R. § 204.5(m).  In addition to fulfilling other requirements, individuals applying for such visas must be sponsored by one of

Opposition to Plaintiffs' Motion for Summary Judgment and Reply in Support of Defendants' Motion to Dismiss or for Summary Judgment and ("Def. Reply"); and Plaintiff's Reply in Support of Motion for Summary Judgment ("Pl. Reply").

two kinds of organizations: a "bona fide nonprofit religious organization" or a "bona fide organization which is affiliated with the religious denomination."  Id.

At issue in this case (according to plaintiffs) is the definition of these terms under the regulations, and the application of those definitions to visa applications.  "Bona fide nonprofit religious organization in the United States" is defined as

> an organization exempt from taxation as described in section 501(c)(3) of the Internal Revenue Code of 1986 as it relates to religious organizations, or one that has never sought such exemption but establishes to the satisfaction of the Service that it would be eligible therefor if it had applied for tax exempt status.

8 C.F.R. § 204.5(m)(2).  "Bona fide organization which is affiliated with the religious denomination" is defined as:

> an organization which is closely associated with the religious denomination and which is exempt from taxation as described in section 501(c)(3) of the Internal Revenue Code of 1986 as it relates to religious organizations.

Id.  An applicant for a religious worker visa also "must have been performing the vocation, professional work, or other work continuously (either abroad or in the United States) for at least the two-year period immediately preceding the filing of the petition."  8 C.F.R. § 204.5(m)(1).

Since the creation of the immigrant and special immigrant classification in 1991, Arden Wood and other CSNFs have sponsored foreign nationals to serve as Christian Science nurses.  See Compl. ¶¶ 35, 36.  Plaintiffs allege that for purposes of visa applications, CSNFs have been considered "bona fide organizations affiliated with the religious denomination" of Christian Science.  See id. ¶¶ 5, 57.

In 2002, Arden Wood filed petitions for I-360 special immigrant-religious worker visas as Christian Science nurses on behalf of Plaintiff Bihag and Linda Dewyanti (who is not a party to this case).  See Compl. ¶ 46.[2]  Defendant CIS' California Service Center denied Bihag's petition in May 2003, on the grounds that she had failed to provide documentation sufficient to demonstrate that Arden Wood was in fact a bona fide religious organization or organization affiliated with a religious denomination as defined in 8 C.F.R. § 204.5(m).  See Compl. ¶¶ 54-55.[3]  The Service Center stated that the documentation of tax-exempt status submitted with the petition, a letter by the IRS recognizing Arden Wood's tax-exempt status under 26 U.S.C. § 509(a)(1), failed to show that Arden Wood was tax-exempt under the provisions of 26 U.S.C. § 501(3)(c) "as it relates to religious organizations," as required by INA regulations.  See id.; see also 8 C.F.R. § 204.5(m)(2), (m)(3)(i)(A).  Dewyanti's petition was denied on identical grounds. See Compl. ¶¶ 54-55.

Petitioner appealed to the USCIS' Administrative Appeals Office ("AAO"), which denied the appeal in July 2004.  See Compl. ¶ 56. Plaintiffs filed their complaint for declaratory and injunctive relief and a motion for preliminary injunction in this Court to force CIS to grant the petitions on February 22, 2005.  Ms. Bihag filed a renewed I-360 petition in December 2004, which was approved on April 12, 2005.  See Pls'. Mot. Leave to File Suppl. Ex. to its Rep. Mem. (May 27, 2005).

---

[2]      At the time this lawsuit was filed, Ms. Bihag had been residing in the United States on an R-1 visa since September 2001.  See Compl. ¶ 38.

[3]      The documentation requirements for special immigrant-religious worker visa applications are detailed in 8 C.F.R. § 204.5(m)(3).

There was oral argument on the motion for a preliminary injunction before this Court on June 6, 2005, after which the Court denied the motion for a preliminary injunction. Plaintiffs filed an interlocutory appeal, and the D.C. Circuit affirmed the denial of the motion for a preliminary injunction on February 22, 2006.  The parties then filed and briefed the motions now before the Court.  Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted under Rule 12(b)(6), or for summary judgment under Rule 56.  See Def. Mot. at 1.  Defendants argue, among other things, that "because the petition of the sole individual plaintiff for a permanent visa has been granted, this case is moot and the plaintiff associations no longer have standing to contest the decision of the AAO or the propriety of the regulation."  Id. Plaintiffs respond to this argument by asserting that "this case is not a direct appeal from any single AAO decision, but constitutes an original proceeding seeking (1) declaratory relief regarding the correct interpretation and application of the religious worker visa statute [and regulations], and (2) injunctive relief from a CIS ongoing 'policy.'" Pl. Mem. at 5.[4]

## II.  DISCUSSION

Federal courts are courts of limited jurisdiction, with the ability only to hear cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress.  See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005);  Hunter v. District of Columbia, 384 F.Supp.2d 257, 259 (D.D.C. 2005); Srour v. Barnes, 670 F. Supp. 18, 20, (D.D.C. 1987) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511 (1973)).

---

[4]     A review of plaintiffs' complaint confirms this characterization of their lawsuit. See Compl. ¶¶ 92-93.

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal

Rules of Civil Procedure, the plaintiff bears the burden of establishing that the Court has

jurisdiction.  See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72

(D.D.C. 2004).  In considering whether to dismiss a complaint for lack of subject matter

jurisdiction, the Court must accept all of the factual allegations in the complaint as true, but may

in appropriate cases consider certain materials outside the pleadings.  See Jerome Stevens

Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  "[W]here necessary, the court

may consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

_____ "Three inter-related judicial doctrines -- standing, mootness, and ripeness --

ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'" Worth v.

Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) (citing U.S. Const. art. III, § 2.).  The ripeness

doctrine "limits the power of federal courts in adjudicating disputes.  Its roots are found in both

the Article III requirement of 'case or controversy' and prudential considerations favoring the

orderly conduct of the administrative and judicial processes."  State Farm Mut. Auto. Ins. Co. v.

Dole, 802 F.2d 474, 479 (D.C. Cir. 1986).  To meet the Article III requirements of ripeness in the

context of a challenge to an administrative action, a plaintiff must demonstrate both (1) the

fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court

consideration.  See Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967).  In evaluating

such a challenge, a court must consider whether judicial intervention would inappropriately

interfere with further administrative action, whether the court would benefit from further factual

development of the issues, and whether delayed review would cause hardship to the plaintiffs.

See Wyoming Outdoor Council v. U.S. Forest Service, 165 F.3d 43, 48-49 (D.C. Cir. 1999)

(quoting Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998)).   Sometimes the

issue presented is a purely legal question, allowing for decision without the need for additional

development of the factual record, but the case generally is not fit for review if the agency has

not made a final decision on the matter before it.   See State Farm Mut. Auto. Ins. Co. v. Dole,

802 F.2d at 479.   The ripeness doctrine prevents the courts through premature adjudication "from

entangling themselves in abstract disagreements over administrative policies," and it "protects

agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties."   Abbott Laboratories v. Gardner, 387

U.S. at 148-49.

> Standing is an Article III requirement under which the plaintiffs must show, at an

"irreducible constitutional minimum": (1) that they have suffered an injury in fact – the invasion

of a legally protected interest; (2) that the injury is fairly traceable to the defendant's conduct (a

causal connection); and (3) that a favorable decision on the merits likely will redress the injury.

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Worth v. Jackson, 451 F.3d at

858; Gettman v. DEA, 290 F.3d 430, 433 (D.C. Cir. 2002).[5]   The alleged injury in fact must be

---

[5]     These are the requirements for constitutional standing.  Prudential standing is a
related doctrine, which is a "judicially self-imposed limit[] on the exercise of federal
jurisdiction," Bennett v. Spear, 520 U.S. 154, 162 (1997); see also Elk Grove Unified School
District v. Newdow, 542 U.S. 1, 11-12 (2004); Building Industry Ass'n of Superior California v.
Babbitt, 979 F. Supp. 893, 899 (D.D.C. 1997).  It "applies unless it is expressly negated."
Bennett v. Spear, 520 U.S. at 163; see State of Idaho v. ICC, 35 F.3d 585, 592 (D.C. Cir. 1994).
One of the requirements of prudential standing is "that a plaintiff's grievance must arguably fall
within the zone of interests protected or regulated by the statutory provision or constitutional
guarantee invoked in the suit."  Bennett v. Spear, 520 U.S. at 162 (citing Allen v. Wright, 468

concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative.

See Lujan v. Defenders of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858;

Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002).  If plaintiffs cannot meet all three

prongs of this test, then the Court must dismiss the suit for lack of standing.

Individuals, of course, may have standing in particular cases.  To have individual

standing, "[t]he plaintiff must show that the conduct of which [it] complains has caused [it] to

suffer an 'injury in fact' that a favorable judgment will redress."  Elk Grove Unified School

District v. Newdow, 542 U.S. at 11-12.

"An organizational plaintiff . . . may have standing to sue on its own behalf 'to

vindicate whatever rights and immunities the association itself may enjoy. . . .'"  Common Cause

v. Federal Election Commission, 108 F.3d 413, 417 (D.C. Cir. 1997) (quoting Warth v. Seldin,

422 U.S. 490, 511 (1975)).  To sue on its own behalf, however, an organization "must

demonstrate that the organization has suffered injury in fact, including such concrete and

demonstrable injury to the organization's activities – with [a] consequent drain on the

organization's resources – constituting . . . more than simply a setback to the organization's

abstract social interests."  National Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433

(D.C. Cir. 1995) (quotations and citations omitted).

An association may also have "standing to bring suit on behalf of its members

when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it

seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor

U.S. 737, 751 (1984)).  Because the Court concludes that plaintiffs do not have constitutional
standing, it need not address the requirements of prudential standing.

the relief requested requires the participation of individual members in the lawsuit."  Hunt v.

Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).

> In this case, plaintiffs argue that Arden Wood and Tenacre have standing to sue on

their own behalf, presumably because they are the petitioners for the visas of their Christian

Science nurse workers, such as plaintiff Bihag.  See Pl. Opp. at 8.  Plaintiffs also assert that

AOCSN has associational standing on behalf of its members – various Christian Science nursing

homes – to challenge the actions of CIS.  See Pl. Opp. at 9.  Plaintiffs encourage the Court to

decide the issue presented in their motion for summary judgment without considering Arden

Wood's standing, because, they assert, Arden Wood's standing was conceded by the defendants

earlier in this lawsuit.  See id.  As the Court explained, *supra* at 7-8, however, the requirements

of constitutional standing stem from Article III of the Constitution and implicate the power of

this Court to act.  The Article III case or controversy requirement therefore may not be conceded

or waived by any party.  See, e.g., Ctr. for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1156

(D.C. Cir. 2005) ("This Court, like all Article III courts, is one of limited jurisdiction; we cannot

decide cases that we lack constitutional authority to decide.").[6]

---

[6]     The plaintiffs argue that the Court should not consider defendants' standing arguments because "the D.C. Circuit rejected CIS' lack of standing argument."  Pl. Opp. at 8 (citing Transcript of February 7, 2006 Oral Argument, D.C. Circuit Case No. 05-5268).   The Court finds this argument unpersuasive.  First, the D.C. Circuit did not issue an opinion during oral argument.  Nor did its written judgment say anything about standing.  Second, counsel for plaintiffs informed the D.C. Circuit that he believed the undersigned was going to be receptive to future motions to dismiss based on standing and/or mootness.  See Transcript of February 7, 2006 Oral Argument, D.C. Circuit Case No. 05-5268, at 28:8-12.  The oral argument in the D.C. Circuit appears to have focused largely on the denial of the motion for a preliminary injunction, because that was the order that was appealed, and the Circuit specifically noted during argument that if and when the undersigned decided any motions to dismiss, those also could be appealed.  See id. at 28:23-25.

Defendants argue, and the Court agrees, that none of the plaintiffs in this case have standing to bring suit.  See Def. Mem. at 18-20.  The visa petition of the sole individual plaintiff in this case, Ms. Bihag, has been granted.  See Pl. Opp. at 6.  Without a denial of a specific visa application any longer at issue in this case, the Court is presented with a hypothetical, speculative case – there is no injury-in-fact.  For that reason, the Court concludes that plaintiff Bihag and plaintiff Arden Wood, her employer, do not have either individual or organizational standing with respect to this lawsuit.[7]  The same is true of Tenacre – it is a facility named as a plaintiff in this case without any specific action at issue taken against it by any of the defendants.  That leaves one plaintiff, AOCSN, which claims to have associational standing to bring suit on behalf of its members.

As noted above, the first requirement of associational standing is that the members of the association would otherwise have standing to sue in their own right.  See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. at 343.  For the reasons just explained with respect to Arden Wood and Tenacre, the Court doubts that AOCSN can show – in the context of *this* lawsuit – an injury sustained by one of its members.[8]  Regardless, the Court concludes that there is no standing for a reason that was not precisely identified by any of the parties in their briefs, except perhaps in the defendants' reply brief.  See Def. Reply at 4 n. 4.

Plaintiffs contend that "this case is not a direct appeal from any single AAO decision, but constitutes an original proceeding seeking (1) declaratory relief regarding the

---

[7]    Alternatively, Ms. Bihag's case is now moot.

[8]    AOCSN is an association of the Christian Science Nursing facilities, not of the Christian Science nurses.  Arden Wood and Tenacre are themselves members of AOCSN.  See Compl. ¶ 17.

10

correct interpretation and application of the religious worker visa statute [and regulations], and (2) injunctive relief from a *CIS ongoing 'policy.'*" Pl. Mem. at 5 (emphasis added).  The Supreme Court has held, however, that plaintiffs "cannot seek *wholesale* improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990) (the entirety of the Bureau of Land Management's land withdrawal review program is not a final agency action within the meaning of the APA) (emphasis in original); see also Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA."); Sierra Club v. Peterson, 228 F.3d 559, 566 (5th Cir. 2000) ("Lujan thus announced a prohibition on programmatic challenges[.]") (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. at 891); Nat'l Wildlife Fed'n v. Caldera, Civil Action No. 00-1031, 2002 WL 628649 (D.D.C. March 26, 2002); American Farm Bureau v. EPA, 121 F. Supp. 2d 84, 102 (D.D.C. 2000) (Courts "have repeatedly refused" to entertain programmatic attacks.).

As the Supreme Court further explained:

> Under the terms of the APA, respondent must direct its attack against some particular "agency action" that causes it harm.  Some statutes permit broad regulations to serve as the "agency action," and thus to be the object of judicial review directly, even before the concrete effects normally required for APA review are felt.  Absent such a provision, however, a regulation is not ordinarily considered the type of agency action "ripe" for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.

Lujan v. Nat'l Wildlife Fed'n, 497 U.S. at 891; see also Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) ("The limitation to discrete agency action precludes the kind of broad, programmatic attack we rejected in Lujan v. National Wildlife Federation, 497 U.S. 871[.]).  The plaintiffs in this case have described their own position as just such a broad policy attack.  See Pl. Opp. at 5.[9]  Because such broad programmatic policy attacks do not present justiciable cases or controversies, the Court will dismiss this lawsuit for lack of jurisdiction.  If and when another CSNF is denied a work permit for one of its potential employee/Christian Science nurses, then an appropriate lawsuit may be filed by the appropriate plaintiffs at that time.

An Order consistent with this Opinion will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   March 27, 2007

----

[9]      Indeed, the first prayer for relief in plaintiffs' Complaint requests that the Court declare that defendants' "interpretations, policies and practices" are contrary to law.  See Compl. at 49.